# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

JOHN F. JOHNSON,
SSN:  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

                     Plaintiff,          :        Case No. C-3-91-312

    - vs -                            District Judge Walter Herbert Rice
                                          Magistrate Judge Michael R. Merz

LOUIS W. SULLIVAN, M.D.,
  SECRETARY OF HEALTH
  AND HUMAN SERVICES,

                     Defendant.        :

---

## REPORT AND RECOMMENDATIONS OF
## UNITED STATES MAGISTRATE JUDGE

---

       Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Secretary of Health and Human Services (the "Secretary") denying Plaintiff's application for Social Security benefits.  The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

       Judicial review of the Secretary's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g).  The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Secretary's decision. The Secretary's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938));  *Landsaw v. Secretary of HHS*, 803 F. 2d 211, 213 (6th Cir. 1986).  Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a



1

directed verdict (now judgment as a matter of law), against the Secretary if this case were being tried to a jury. *Foster v. Bowen*, 853 F. 2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939). In deciding whether the Secretary's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F. 2d 359 (6th Cir. 1978); *Houston v. Secretary of HHS*, 736 F. 2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F. 2d 383 (6th Cir. 1984). However, the Court may not try the case de novo, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of HHS*, 658 F. 2d 437, 439 (6th Cir. 1981).

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B).

The Secretary has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 (1990). First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Secretary determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed

2

impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d)(1990). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Secretary determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a prima facie case of disability and the burden of proof shifts to the Secretary to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert*, 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSI on March 23, 1989, with a protective filing date of March 10, 1989, alleging disability from 1975, due to total loss of left arm and shoulder, asthma, arthritis, bad back, migraine headaches, and anxiety. (Tr. 74-77). Plaintiff's application was denied initially and on reconsideration. (Tr. 98-100; 109-11). A hearing was held before Administrative Law Judge Arnold, (Tr.28-61), who found that Plaintiff was not disabled. (Tr. 13-24). The Appeals Council denied Plaintiff's request for review, (Tr. 4-6), and Judge Arnold's decision became the final decision of the Secretary.

In concluding that Plaintiff was not disabled, Judge Arnold made the following relevant findings:

> 1. Plaintiff has severe right shoulder and left arm impairments, illiteracy, and asthmatic condition, and somatoform and passive/aggressive personality disorders, but he does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 20, finding 2).
>
> 2. Plaintiff's subjective complaints lack a reasonable medical basis and are not considered entirely credible. *Id.*, finding 3
>
> 3. Plaintiff has the residual functional capacity to perform, at a minimum, a restricted range of low-stress, simple repetitive sedentary work which would not involve contact with the public; which would not expose him to hazards, unprotected heights, or exposure to dangerous/moving equipment or machinery; which would not require climbing, crouching, balancing, stooping, squatting, kneeling, crawling, or overhead or under waist

reaching, which would not involve exposure to fumes, odors, dust, gases, or vibration; which would not require feeling with the left hand; which would not involve exposure to wet weather or poor ventilation; which would not require pushing or pulling with hand or foot controls; and which would not require that Plaintiff drive a vehicle or possess the ability to read or write. Id., finding 4.

4. Based on an exertional capacity for sedentary work, and Plaintiff's age, education, and work experience, Section 201.23 of the Grid would direct a conclusion of "not disabled". (Tr. 21, finding 9).

5. Although Plaintiff's additional nonexertional limitations do not allow him to perform the full range of sedentary work, using the above-cited rule as a framework for decisionmaking, there are a significant number of jobs in the economy which he could perform. Id., finding 10.

Judge Arnold concluded that Plaintiff was not disabled and therefore not entitled to benefits under the Act. (Tr. 21).

The transcript contains hospital records which indicate as follows:

March 15, 1983--emergency room treatment for a puncture wound of right palm; x-ray of right hand: negative. (Tr. 114-15).

March 28, 1984--emergency room treatment for complaints of right arm being painful for several years and a cough for several months; hit crazy bone in 1980 and more problems since that time; diagnosis: right arm pain, bronchospasms. (Tr. 116).

May 31, 1988--emergency room treatment for pain in right wrist; x-ray right wrist: normal right wrist; diagnosis: acute monoarticuloar arthralgia. (Tr. 117-21).

May 22, 1989--emergency room treatment for trouble breathing; inspiratory and expiratory wheezes throughout; chest x-ray: normal; diagnosis: acute exacerbation of reactive airway disease. (Tr. 126-35).

Treating physician Dr. Fiel reported as follows:

4

March 16, 1989--very, very limited use of his left arm; suffers from asthma and acute anxiety syndrome; fractured his left arm and this was followed by rather severe infection; has severe contractures of the tendons of the left arm and atrophy of the muscle and has only approximately 10% use of the left arm; prognosis is poor. (Tr. 122-23).

April 17, 1989--I have never seen him over the years I have treated him in a severe asthma attack; to my knowledge, over the last 12 months, he has not been admitted to the hospital for any acute asthma attacks; has some asthmatic wheezing when listening to the lungs and that is all the physical findings; the last chest x-ray I have was done 8/31/86, and that was normal; he does complain of some shortness of breath; his biggest problem is the fracture of his left forearm which was followed by an infection causing deformity of the forearm and the hand; I would say he is left with approximately 90% use of the left forearm and hand as a result of the infection; x-rays of cervical, lumbar, and dorsal spine taken in 1986, including a CAT scan of the lumbar spine, were all reported as normal; there is no great limitation of motion in any joints except as described in the left forearm; he has never complained to me of headaches; as far as mentally, I think he has a very low IQ; he does tend to be able to relate and hear fairly well, but he does ramble quite a bit at times; diagnosis: asthma, mild to moderate deformity of the left forearm and hand with loss of 90% of function, low grade IQ. (Tr. 124-25).

Treating physician Dr. Schear reported as follows:

July 19, 1989--diagnosis: asthma, right shoulder pain, left elbow pain, bronchitis, sinusitis, and hyperglycemia; based on objective findings, ability to do work-related activities is fair. (Tr. 136).

The transcript contains Dr. Schear's office notes dated June 16 to December 8, 1989. (Tr. 167-71; 194-200). These notes reflect that Dr. Schear treated Plaintiff for sinus headache, pain in the right arm, rectal pain, asthma, right shoulder pain, bronchitis, and arthralgia. Id.

Examining psychologist Dr. Flexman reported on June 19, 1989, as follows: states his relationship with spouse is good;  states his nerves are good unless he is pressured to do paper work;  gets along variably with others, staying to himself because he does not like others to know his business;  has some breathing problems at night;  has asthma once a week, but denied any other significant accidents, injuries, illnesses, or diseases;  drives once a week as needed;  cooks daily and will do housework and make repairs once or twice a week;  shops once a week as needed with his wife;  enjoys camping once or twice a month;  visits friends once a week and sees relatives once or twice a week;  was somewhat disheveled in his overall l appearance;  left hand was paired and fingers were curled;  facial expressions revealed anger and agitation;  appeared to be irritable and unmotivated with adequate energy level;  affect appeared to be overly dramatic, manipulative, and negative;  mood was reported to be good which was not consistent with his affect;  full scale IQ:  80;  verbal IQ:  81;  performance IQ: 81  diagnostic impression:  somatoform disorder, passive aggressive personality disorder with anti-social personality traits;  ability to understand and remember simple one or two step job instructions does appear to be adequate;   ability to get along with fellow workers and supervisors or deal with the public is somewhat impaired due to his personality disorder, however, these appear to be of long standing duration and have not interfered with his ability to function in the past in terms of job situations;  ability to sustain concentration and attention is good. (t. 139-43).

Examining physician Dr. Kedzi reported on July 10, 1989, as follows:  stopped working two years ago because of his asthma;  was generally in good health until the asthma problem started somewhat more than two years ago;  at age 5 he had an accident and fracture of his lower arm;  subsequently, he had osteomyelitis with prolonged infection and delayed healing;  due to the early age of the fracture, his lower arm and part of the upper arm did not develop and is several inches shorter than the right arm;  smokes one pack of cigarettes daily; respirations not belabored;  normal A-P diameter;  chest excursions on deep inspiration and expiration shows somewhat delayed expiratory phase;  multiple wheezes on both sides and

6

occasional ronchi; range of motion of the left elbow is decreased but he can move it actively to a certain degree; left wrist motion is decreased; fingers are in a claw position and have very limited motion; with the help of his right hand, he can hold small objects between his thumb and the second and third fingers; complains of pain on passive motion of right shoulder; intellectual functioning is at the level of about 8-10 grades of education; ability to concentrate and maintain attention appears to be good; functions at of low level of intelligence and his daily activity is restricted by his breathing problem and the left arm problem; on x-ray, lungs appear to be slightly hyperinflated but otherwise normal; has mild to moderate asthmatic condition which is most of the time under control with medication; still smokes and has additional problems with sinus discomforts and headaches which are apparently sinus headaches; has some bursitis of his right shoulder but there is not evidence of any significant arthritis; has an injured left arm which is shortened and is not significantly functional for any type of mechanical work. (Tr. 145-50).

Reviewing psychologist Dr. Benninger reported on July 10, 1989, as follows: slight restrictions of activities of daily living; moderate difficulties in maintaining social functioning; seldom has deficiencies on concentration, persistence, or pace; never has episodes of deterioration; ability to understand and remember very short and simple instructions not significantly limited; ability to sustain concentration and persistence not significantly to moderately limited; abilities with respect to social interaction not significantly to moderately limited; ability for adaptation not significantly limited; exhibits some anti-social attitudes and can respond in a harsh manner or with temper; can understand, remember, and carry out simple instructions. (Tr. 151-62).

Reviewing physician Dr. Hoeflinger reported on July 25, 1989, as follows: able to lift and/or carry up to 20 pounds and up to 10 pounds frequently; able to stand and/or walk and sit each for about 6 hours out of an 8 hour day; markedly limited [use of] left [arm]; bimanual manipulation markedly reduced; mild clinical and x-ray signs of COPD; main

7

impairment is left arm with moderate upper extremity atrophy and marked lower extremity atrophy; left fingers fixed in claw position with very little motion. (Tr. 163-65).

Reviewing physician Dr. Moore reported on September 29, 1989, as follows: able to lift and/or carry up to 20 pounds and up to 10 pounds frequently; able to stand and/or walk and sit each for about 6 hours out of an 8 hour day; use of left arm and hand for supportive purposes only; 90% loss of use of left upper extremity; use of machinery, working at heights is limited by left arm impairment; driving and working with dangerous machinery is limited; asthma is not of a severity that should preclude work. (Tr. 172-80).

Reviewing psychologist Dr. Lewis reported on October 4, 1989, as follows: no evidence of limitation in ability to understand and remember very short and simple instructions; ability to sustain concentration and persistence not significantly limited; abilities with respect to social interaction not significantly to moderately to markedly limited; not suited to work with general public due to instability; may have difficulty relating to supervisors and co-workers, although he gets along with family and friends; capable of simple, routine work in a low pressure setting; slight degree of limitation in activities of daily living; moderate degree of limitation in maintaining social functioning; seldom has deficiencies of concentration, persistence, or pace; never has episodes of deterioration. (Tr. 181-93).

The transcript contains treating physician Dr. Fried's office notes dated June 5 to August 27, 1990. (Tr. 213). These notes indicate that tests showed that Plaintiff had a hearing loss of high pitch, that his lungs were clear, and that Plaintiff had a reduced range of motion of his right shoulder. Id.

Plaintiff testified at the administrative hearing as follows: I drive a couple of times a week; I do not read and write with comprehension; I don't have any use of my left arm; I have bursitis in my right arm; I have difficulty getting my jacket on and off; I've got asthma and at times it's really severe; my medication helps me a lot and as long as I've got my medication and I'm not real active, then it doesn't bother me so much; in the hot weather,

I have to stay in the air conditioning and can't go outside;  when I have an asthma attack, I grab my puffer and start puffing;  I've called the emergency squad only once;  I try to deal with my asthma attacks on my own;  if I'm standing on concrete, I can stand 5 minutes before I start hurting;  if I stand on a carpeted floor, I can stand about 15 minutes;  I help my wife in the house and we work together on meals;  we grocery shop once a month.  (Tr. 31-51;  55-60).

> Judge Arnold propounded that following hypothetical question to the VE:
>
>> Considering the age, education and work experience of the [Plaintiff]...hypothetically he has the residual functional capacity for light work with the following restrictions:  One, that he can only perform jobs that are low stress, as you have defined the work concept of low stress;  two, that he can only...perform those jobs wherein...job responsibilities entail nothing other than simple, repetitive task;  three, that he have no contact with the public in performing his job and only minimal contact with coworkers and supervisors or other persons;  four, that he have no use of his left hand except for steadying and squeezing objects grossly held.  No fine hand, fine finger manipulation at all;  five, that he not be exposed in fulfilling his job responsibilities to any hazards to include unprotected heights or exposure to dangerous or moving equipment or machinery;  six, that he do no climbing, balancing, stooping, squatting, kneeling, crawling or crouching and that there be no anticipated overhead or under-waist reaching and no vibration;  seven, that he not be subjected to any fumes, odors, dust, gases or poor ventilation;  and eight, that he not perform a job that requires feeling with his left hand;  nine, that he not be exposed to cold or wet weather;  and ten that he not do any pushing or pulling with hand or foot controls nor any driving or a motor vehicle as a part of fulfilling his job responsibilities. Now, do any jobs exist in the regional economy that comply with all restrictions contained in the hypothetical?
>
> (Tr. 53-54).

> In response, the VE testified that there were 6,000 jobs which Plaintiff could perform.  (Tr. 54-55).

Judge Arnold then amended his hypothetical question to include the ability to perform only jobs at the sedentary level. (Tr. 55). In response, the VE testified that there were 3,000 jobs which Plaintiff could perform. Id.

In his Statement of Specific Error, (Doc. 8), Plaintiff argues that the Secretary's use of the Grid as a framework for decisionmaking and his reliance on the testimony of a vocational expert conflict with his own directives, and therefore his decision is not supported by substantial evidence. In support of his position, Plaintiff essentially argues that his impairments exceed those in Example 1 to Section 201.00(h) of the Grid and therefore the Secretary should have found that he (Plaintiff) was disabled. Plaintiff also argues that a February 21, 1980, memorandum from the Associate Commissioner of the Social Security Administration for operational policy and procedure reflects that when the Grid was first promulgated, the examples under Rule 201.00(h) were intended to "ensure that the same claimants in the 18-44 age range who were found disabled in the past would be paid benefits under the expanded regulations--namely those with significant functional restrictions within sedentary work...". Plaintiff also relies on language in that memorandum which reads, "the major point brought out in the examples is the extreme adversity of a significant functional limitation within the definition of sedentary work...Examples 1 and 2 are illustrative of the relatively few cases where claimants in this age group are found disabled at the final step of the adjudication."

Plaintiff argues further that it has long been accepted that the Administration is bound by its own rulings and procedures. Plaintiff also argues that while both the Administration and this Court have on occasion interpreted the examples under 201.00(h) as describing fact patterns that could result in a finding of disabled, it is clear from the memorandum that it was the Secretary's intention that these examples be illustrative of the relatively few cases where claimants in this age group are [to be] found disabled.

Plaintiff's arguments notwithstanding, in Abbott v. Sullivan, 905 F.2d 918 (6th Cir. 1990), the Sixth Circuit explained that example 2 creates an exception to a section of the

10

Grid and <u>allows</u>, but does not require, the adjudicator to find a claimant "disabled" who, under the Grid would otherwise find a claimant with the same factors "not disabled". <u>Id</u>. at 927. In other words, pursuant to <u>Abbott</u>, the Secretary is permitted to deviate from the Grid and find a claimant disabled, but he is not bound to do so.

The 1980 memorandum upon which Plaintiff relies significantly pre-dates *Abbott*. Furthermore, this Court is bound by the law as announced by the Sixth Circuit.

This Court therefore concludes that the Secretary did not err by not finding Plaintiff disabled under Section 201.00(h) of the Grid.

This Court further finds that the hypothetical question which Judge Arnold propounded to the VE accurately reflected Plaintiff's impairments as supported by the medical evidence of record. Therefore, the VE's testimony provided the Secretary with substantial evidence upon which to base his decision.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker*, 540 F. Supp. 686 (S.D. Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. . .. [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of H.H.S.*, 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939). The Secretary's decision in this case is supported by such evidence.

It is therefore recommended that the Secretary's decision that Plaintiff was not disabled be affirmed.

March 25, 1992.

Michael R. Merz
UNITED STATES MAGISTRATE JUDGE

11

copy to:

Joseph E. Kane
Assistant United States Attorney
85 Marconi Boulevard
Columbus, Ohio 43214

Charles Goldstein
Assistant Regional Counsel
105 West Adams Street
Chicago, Illinois 60606

Jonathan A. Horwitz
Attorney for Plaintiff
2160 Miami Valley Tower
Dayton, Ohio 45402

Charles J. Arnold
Administrative Law Judge
Centre City Offices
40 South Main Street
Dayton, Ohio 45402